May it please the Court, Captain Curtis for Petitioner. I'd like to reserve two minutes for rebuttal time. The immigration judge in the Board of Immigration Appeals erred in this case, in considering it and emphasizing the fact that it was a case of conscription, where the evidence compelled the conclusion that the group involved was a non-governmental militia group  Petitioner is arguing that Mr. Saparto made it clear at several points throughout his testimony and in his documentary evidence that the group that had recruited him and thereafter kidnapped him was the militia working alongside the government, but not actually a part of the government. In fact, the militia group was originally formed as a vigilante group, which was to serve as a watchdog for the Liberian government. The use of the terminology vigilante in and of itself shows that the group was one of a civilian group that took the law into their own hands rather than part and parcel of the military in Liberia. Petitioner is arguing that the immigration judge in Board of Immigration Appeals analysis of the case as a conscription case was tainted, sorry, that their analysis of the case as a conscription case tainted the remainder of their determinations, including their determination respecting past persecution and their nexus analysis. Because the case was considered one of conscription, the immigration judge failed to consider the cumulative evidence in the case. Importantly, he failed to consider any evidence respecting Mr. Saparto's actual targeted kidnapping, the events that befell him at the militia camp, instead focusing really on what he determined to be a single beating by the militia. A single what? Excuse me, counsel? Yes, Your Honors. I'm sorry, go ahead. I just couldn't hear your statement. A single what by the militia? A single beating by the militia, Your Honor. Counsel, I am not clear on what political opinion is attributed to him by the militia. Petitioner is arguing that the petitioner, the political opinion was that of his father's political opinion. His father had stood opposed to the formation of the militia in the first place. What evidence is there that the militia attributed his father's political opinion to him? I would argue, Your Honors, that the evidence is that of relevant circumstances, which is a permittable amount of evidence under case law such as Novice v. INS. I believe the timing of the events, the fact that his father was kidnapped by the same militia that kidnapped Mr. Saparto within six months of Mr. Saparto's kidnapping, and the fact that it would appear that he was targeted for kidnapping. They specifically singled him out in the middle of the night. They blindfolded him. They took him away to a camp. And there's no indication that there was a broad recruitment plan by the militia. It doesn't look like they were trying to kill him. It looks like they were trying to draft him. But they did state that if he left or didn't help them in some way and therefore stood opposed to him, that they would, in fact, kill him and threaten his entire family. I would argue that the kidnapping itself was also a form of persecution, and they did subject him to harm. They beat him. They beat him so severely that his left knee was actually – sorry, his right knee was actually permanently damaged. And I think that killing him isn't required for finding a past persecution. I think the cumulative evidence, the fact that he was kidnapped, that he was beaten, the manner in which he was detained, he was held for the first three days in a military camp where he couldn't stretch out his legs, as well as the fact that he was threatened with death. Cumulatively, these events could have been considered persecution. I also argue that under controlling case law such as Navas, the events that befell his father and his brother should have been considered as part of persecution as well. So the fact that he wasn't necessarily killed doesn't prevent this court from finding that he was subjected to past persecution. In addition, I would note that the evidence shows that the military was actually not involved in this case, and Mr. Zaparto testified that he – in fact, the military in Liberia does not require conscription. In this case, also, the fact was that Mr. Zaparto was part of a well-known family in his community, and I think that does lend itself to the next finding as well. His father wasn't just a member of the village. He was actually a community chairman, and he had actually been one of the people that were originally approached to form the vigilante groups that became the militia. Where do we have that in the record? It's actually most clearly stated in his asylum application, which is in the appellate record at page 391. Although he also stated in his testimony in the record at page 222, it's most clearly stated in his application. And his father was only kidnapped after he stated opposition to forming the vigilante groups and spoke out against the government. So the evidence of that is that the same militia arrested his father, and then his father disappeared. Correct. Correct? So we don't know what happened to his dad. We don't know what happened to his father. Okay. And then the brother went looking for his father? Correct. And was detained for a period of some months, but then returned? Correct. He was released after three months. Do we know who detained his brother? It's unclear from the record whether it was militia or government. He just states that his brother was arrested. He doesn't specifically state whether it was actually the government or the militia. I would argue in either scenario, it does lend support to his case, because if it was the militia, then it's the actual same group that kidnapped his father. If it was the government, it would tend to lean towards the fact that the government was unable or unwilling to control this militia, and in fact was actively helping the militia to persecute these individuals by preventing those individuals from trying to seek justice and looking for them. In addition, Your Honors, respecting the well-founded fear issue, the BIA in this case committed error in determining that the presumption had been overcome. Specifically, it did not complete an individualized analysis under the cases required under their Code of the Asheville Act. The BIA's findings were completely conclusory on the subject. They merely found that the presumption had been overcome. While they do reference the immigration judge's decision, the problem is that the immigration judge's decision never actually discussed the presumption in favor of well-founded fear or withholding of removal. He simply concentrated on cat. He did conduct an individualized analysis respecting the cat issue, but I would argue he never completed an individualized analysis applying the proper presumption for withholding of removal and for the well-founded fear, and that the BIA, in failing to look at the issue on an individualized basis, erred as a matter of law and did not follow precedent from the circuit. Is there evidence there that this testimony that once in a while, his uncle told him once in a while people come around looking for him? Yes, as well as the country conditions. I would note that the immigration judge, twice in his decision, when he was analyzing these changed country conditions, had noted that, in fact, the militia, the former combatants were still out there and that they were still committing human rights abuses. He had merely found that there was sufficient other evidence to suggest that it was not more likely than not that there would be torture. So I think that there was country conditions that supported a continued well-founded fear. It just might not have been enough to overcome the cat presumption, and that the Board of Immigration appeals in failing to do an individualized analysis erred. Your Honors, I see I'm approaching my eight-minute mark, and I would like to reserve the remainder for the audience. Thank you. Good morning, Your Honors. May it please the Court. My name is Carrie Monaco, and I represent the respondent, Attorney General Eric Holder, in this matter. In this immigration case, the petitioner challenges the denial of his claims for asylum, withholding of removal, and the protection under the Convention Against Torture. In connection with Mr. Soparto's asylum and withholding of removal claims, the agency reasonably determined that Soparto did not suffer past persecution on account of an imputed political opinion when he was forcibly recruited into the government militia during the now-ended civil war in Liberia. Even assuming Mr. Soparto suffered past persecution on account of a protected ground, the Board did not err in concluding that there has been a fundamental change of circumstances in Liberia such that he no longer has a reasonable fear of future persecution. And having failed to prove past persecution on account of a protected ground, the agency also correctly determined that Mr. Soparto is not eligible for humanitarian asylum in the absence of reasonable fear of future persecution. Counsel, I can't remember right now. Did they give him an opportunity to explain why, even though the government has changed and there's no longer generally the problem that he might have faced, nevertheless he had some individual risk that was greater than the general risk? Yes. Country conditions were discussed during the initial hearing, and the DHS attorney questioned Mr. Soparto about how his fear relates to the change in regime and the change in country conditions in Liberia. Regarding the nexus issue with respect to the asylum and withholding of removal claims, the government asserts that this is a pretty straightforward Elias Zacharias situation. There's no direct evidence that the militia who recruited Mr. Soparto imputed any political opinion onto him. They never said anything to him. They never said anything that would tie Mr. Soparto's father's political views onto him. And there's also no circumstantial evidence that would compel a finding from this court that the persecutors imputed a political opinion onto him. Mr. Soparto never resisted recruitment. He never expressed a political opinion. And his general, he never claimed that he supported the opposite cause. And Mr. Soparto was kidnapped with 18 other individuals and brought to the same military camp. And there's no explanation of why he may have been targeted differently than these other 18 individuals or why these 18 individuals were chosen. And it appears that the evidence in this case appears to conclude that Mr. Soparto may have just been chosen as an able-bodied person to serve in the militia. And without any direct or circumstantial evidence showing that the militia imputed a political opinion onto him, we'd argue that that finding should be affirmed by this court. Regarding the fundamental change in circumstances in Liberia, the country reports that were submitted by the Department of Homeland Security in this case show that there has been a fundamental change in the country conditions in Liberia since Mr. Soparto departed with the end of the Civil War two years prior to his hearing. And the evidence shows there's been free and fair elections in that country, and that the rebels are no longer in control of most of that country, that the former combatants have been enrolled in rehabilitation programs and have been employed, and that there are certainly no reports that former combatants or former militia members are targeting civilians or former deserters of the militia. The evidence in this case does not compel this court to reverse the finding of the Board of Immigration Appeals that any presumption of a well-founded fear of persecution is rebutted by a fundamental change in circumstances in Liberia. And for the same reason the government urges the court to affirm the denial of the CAT claim as well, due to the change in country conditions in Liberia, Mr. Soparto has failed to show that he risks, more likely than not, risks facing torture upon removal. Unless the court has any further questions for me, the government will rest on its brief. Thank you. Thank you, counsel. Once again, Your Honors, as stated before, government counsel raises the issue of nexus again, but as stated before, I believe that the relevant circumstances in this case show that imputed political opinion, in fact, was in place. In fact, the court never explains why it did not follow case law from the circuit, novice v. INS, that made it clear that there can be an imputed political opinion where a person is a member of a politically active family, other members of which who have been persecuted in the past for their political beliefs. As I previously stated, Mr. Soparto's father had been politically active. He had spoken out against the formation of the government militia. He was kidnapped by the very same militia that kidnapped Mr. Soparto, never heard from again and is presumed dead. His brother also was looking for his father, had made efforts to locate him, made himself arrested, held for three months. He was beaten and he was deprived of food. And through these facts, it's clear that he was part of a politically active family that were also abused. In addition, in this case, it's clear that Mr. Soparto did give evidence that the country conditions as they pertain to him were not such that he would no longer suffer a well-founded fear or even that he no longer had the presumption of recording of removal. He explained that the Taylor government and that Taylor himself had been sent away from the country, but that the militia that he feared was still there and allowed to go free. The country conditions also reflect this fact and show that none of those people had been brought to justice and were still there to harm him today. And he testified that he remained fearful of the militia. His uncle also explained that they were still looking for him. And as I previously stated, the immigration judge did show and agree and confirm that the militia was still at large and they were committing human rights abuses. He had simply found that the cat had not been demonstrated. I'm sorry, Your Honors. I've reached the end of my time. Thank you. Thank you very much. The case just argued will be submitted. The Court will stand and recess for the day.
judges: REINHARDT, KLEINFELD, CHRISTEN